**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

────────────────────────────

BRIDGET P.

                    Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,         No. 3:21-CV-654
                                    (CFH)

                    Defendant.

────────────────────────────

**APPEARANCES:**                **OF COUNSEL:**

Lachman, Gorton Law Firm       PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761
Attorney for plaintiff

Social Security Administration     CANDACE LAWRENCE, ESQ.
6401 Security Boulevard            NICOLE BOUDREAU, ESQ.
Baltimore, Maryland 21235        VERNON NORWOOD, ESQ.
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

      Bridget P.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her applications for disability insurance and supplemental security income

─────────────────────

[1] Parties consented to direct review of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, L.R. 72.2(b), and General Order 18.  See Dkt. No. 6.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

benefits.  <u>See</u> Dkt. No. 1 ("Compl.").  Plaintiff moves for judgment on the pleadings and for the Commissioner's determination to be remanded for the payment of benefits.  <u>See</u> Dkt. No. 13.  In the alternative, plaintiff seeks a remand for further proceedings.  <u>See</u> <u>id.</u> at 27.[3]  The Commissioner moves for judgment on the pleadings and for the Commissioner's decision to be affirmed.  <u>See</u> Dkt. No. 17.  Plaintiff replies.  <u>See</u> Dkt. No. 18-1.  For the reasons that follow, plaintiff's motion is granted, the Commissioner's motion is denied, and the Commissioner's decision is reversed and remanded for further proceedings.

## I. Background

On February 25, 2019, plaintiff filed Title II and Title XVI applications for disability insurance and supplemental security income benefits.  <u>See</u> T. at 11, 224-36.[4]  Plaintiff alleged a disability onset date of October 23, 2017.  <u>See</u> <u>id.</u> at 224, 231.  The Social Security Administration ("SSA") denied plaintiff's claim on May 14, 2019.  <u>See</u> <u>id.</u> at 130.  Plaintiff sought reconsideration of the decision, <u>see</u> <u>id.</u> at 140, and her claim was again denied on  August 26, 2019.  <u>See</u> <u>id.</u> at 143.  Plaintiff requested a hearing, <u>see</u> <u>id.</u> at 155, and a hearing was held before Administrative Law Judge ("ALJ") David Romeo on April 24, 2020.  <u>See</u> <u>id.</u> at 29-56.  On May 19, 2020, the ALJ issued an unfavorable decision.  <u>See</u> <u>id.</u> at 11-22.  On April 12, 2021, the Appeals Council denied plaintiff's

---

[3] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

[4] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. <u>See</u> Dkt. No. 12.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

request for review of the ALJ's decision.  <u>See</u> <u>id.</u> at 1-6.  Plaintiff timely commenced this action on June 4, 2021.  <u>See</u> Compl.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  <u>See</u> 42 U.S.C. §§ 405(g), 1388(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or the determination is not supported by substantial evidence.  <u>See</u> <u>Johnson v. Bowen</u>, 817 F.2d 983, 985-86 (2d Cir. 1987); <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . .  [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by

3

substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §§ 404.1520 and 416.920, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff met "the insurance status requirements of the Social Security Act through December 31, 2022[]" and she had "not engaged in substantial gainful activity since October 23, 2017, the alleged onset date."  T. at 13.  At step two, the ALJ found that plaintiff had

> the following severe impairments: left lumbar radiculopathy, lumbar [degenerative disc disease] with disc protrusion and narrowing of the spinal canal, migraine headaches, bilateral Achilles and posterior tibial tendinitis, bilateral gastrocnemius and plantar fascial fibromatosis, situational depression with anxiety, s/p subdural hematoma, bilateral bone spurs of the calcaneum and ples planus, morbid obesity, cervical [degenerative disc disease], status post subdural hematoma with left frontoparietal craniotomy.

Id. at 14.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Id.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work,

> except she can occasionally operate foot controls.  [Plaintiff] is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but should never climb ropes, ladders or scaffolds, and never be exposed to high, exposed places or moving mechanical parts.  She can tolerate a moderate noise intensity level as defined in the [Dictionary of Occupational Titles and Department of Labor's Selected Characteristic of Occupations].  She can tolerate occasional exposure to light brighter than that typically found in an indoor work environment such as an office or retail store. [Plaintiff] can work at a consistent pace throughout the workday but not at a production rate pace where each task must be completed within a strict time deadline.  The need to change positions from sitting to standing or walking can be accommodated by the occasional standing and walking involved in sedentary work.  She can tolerate a low level of work pressure defined as work not requiring multitasking, very detailed job tasks, significant independent judgment,

very short deadlines, teamwork in completing job tasks, [and] more than occasional changes in work setting.

Id. at 16.  At step four, the ALJ determined that plaintiff was unable to perform any past relevant work.  See id. at 20.  At step five, the ALJ concluded that "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  Id. at 21.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from October 23, 2017, through the date of th[e] decision."  Id. at 22.

### IV. Arguments

Plaintiff argues that the Appeals Council erred in (1) declining to review the ALJ's decision despite her submitting new and material evidence; and (2) failing to articulate how persuasive it found newly submitted medical opinions.  See Dkt. No. 13 at 12-15. Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ failed to assess whether plaintiff's migraines would cause her to be off task or miss work; (2) he failed to support his conclusions regarding light and noise limitations with any evidence in the record; and (3) the limitation to sedentary work is contrasted by medical evidence.  See id. at 16-26.  Finally, plaintiff asserts that the vocational expert's ("VE") testimony is based on an incomplete hypothetical RFC; therefore, the Commissioner failed to meet her step-five burden.  See id. at 26-27.

The Commissioner argues that the Appeals Council was not required to consider the new evidence submitted by plaintiff because it was not material, and that the

Appeals Council was not required to explain the persuasiveness of the new medical opinions.  See Dkt. No. 17 at 5-12.  The Commissioner also avers that the ALJ's decision is supported by substantial evidence, including the hypothetical RFC presented to the VE.  See id. at 12-25.

## V.  Discussion

### A.  Appeals Council

Following the ALJ's unfavorable decision, plaintiff sought review by the Appeals Council.  See T. at 222.  Plaintiff submitted evidence to the Appeals Council that was not before the ALJ: two medical source statements and a treatment note from plaintiff's treating neurologist, Taseer Minhas, M.D.  See id. at 2, 63-71.  The Appeals Council acknowledged this new evidence and stated that "[t]he Administrative Law Judge decided your case through May 19, 2020.  This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before May 19, 2020."  Id. at 2.  The Appeals Council explained that if plaintiff wanted the Appeals Council to consider whether she was disabled after May 19, 2020, she needed to apply again.  See id.  Thus, the Appeals Council concluded that it "found no reason under [its] rules to review the Administrative Law Judge's Decision[]" and "denied [plaintiff's] request for review."  Id. at 1.

### 1.  New and Material Evidence

Plaintiff argues that the Appeals Council was required to review the ALJ's decision because the evidence she submitted—Dr. Minhas' opinions and treatment

note—was new, material, and would likely change the outcome of the ALJ's decision. See Dkt. No. 13 at 12-14.  The Commissioner argues that the evidence is not material and would not likely change the outcome of the ALJ's decision.  See Dkt. No. 17 at 5-8.

The ALJ's decision is dated May 19, 2020.  See T. at 22.  Dr. Minhas' medical opinions are dated June 16, 2020, and August 31, 2020.  See id. at 65, 71.  The treatment note is from a July 14, 2020, follow-up appointment.  See id. at 66.

In the June 2020 opinion, Dr. Minhas checked "yes" to indicate that plaintiff suffers from migraine headaches, and he explained that she "has headaches with photo[phobia], phonophobia[,] along with depression."  T. at 70.  He noted that plaintiff would have migraines approximately four times per week and that her recovery time from a migraine "varies."  Id.  Dr. Minhas indicated that plaintiff's migraines would not cause her pain, they "may" cause fatigue "but depression to"; they "may" diminish her concentration "but depression and sleep apnea too"; her migraines would cause a diminished work pace but "the depression may as well"; and her migraines would cause her to need to rest at work.  Id.  He opined that plaintiff would be off task for more than fifteen percent but less than twenty percent of a workday, and the number of days she might miss work would be "variable[.]"  Id. at 71.  He wrote that he also treats plaintiff for depression and sleep apnea.  See id.

The July 2020 treatment note states that plaintiff had "intractable[5] migraines eventually with different forms of medication which have included amitriptyline,

---

[5] Nicoletti v. Comm'r of Soc. Sec. Admin., No. 20-CV-5141 (KMK/AEK), 2022 WL 6250371, at *12 (S.D.N.Y. Feb. 28, 2022), report and recommendation adopted, 2022 WL 4592902 (S.D.N.Y. Sept. 30, 2022) (citing Healthline, "What is Status Migrainosus?," available at www.healthline.com/health/migraine/status-migrainosus (last visited 2/21/2022) ("Status migrainosus is an especially severe and long-lasting form of migraine headache.  It's also called an intractable migraine.")) ("[I]ntractable migraine is, by definition, status migrainosus."); Corey v. Berryhill, No. 17-CV-

gabapentin, but finds the Botox to help her.  She also has obstructive sleep apnea and is followed by our group for that."  T. at 66.  Dr. Minhas noted that plaintiff "sees a psychiatrist . . . .  Her headaches are better on the Botox, but when it starts to wear off, she needs them.  She is here for her next Botox treatment.  Her last one was on 04/13/2020."  Id.  Plaintiff's neurological examination was normal.  See id. at 67.  Dr. Minhas concluded that plaintiff found "the Botox to help her.  She has also in addition obstructive sleep apnea and depression, for which she sees a psychiatrist.  Since she is due for her Botox treatment today, I will proceed and give it to her, as it does help her significantly."  Id.

In the August 2020 opinion, Dr. Minhas determined that plaintiff would suffer migraines approximately one time per week and they would last approximately two hours.  See T. at 64.  He indicated that plaintiff's migraines "may" cause her fatigue, "may" diminish concentration, "can" diminish work pace, and she would "sometimes" need to rest at work.  Id.  He opined that plaintiff would be off task for more than ten percent but less than fifteen percent of a workday and she would miss one day or less from work each month.  See id. at 65.

"In reviewing the ALJ's denial of . . . benefits, the Appeals Council considers 'new and material' evidence . . . ."  Kirah D. v. Berryhill, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *4 (N.D.N.Y. Feb. 13, 2019) (quoting 20 C.F.R. § 404.970(b); (citing Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996)).  "New evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative.'"  Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) (quoting

00570 (LGF), 2019 WL 180670, at *4 (W.D.N.Y. Jan. 14, 2019) ("[I]ntractable (migraine that continues for more than 72 hours)").

Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)).  "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently."  Id. (citation omitted) (alteration in original).

The Second Circuit has "held that 'medical evidence generated after an ALJ's decision [can] not be deemed irrelevant solely because of timing, [as] subsequent evidence of the severity of a condition suggests that the condition may have been more severe in the past than previously thought.'"  Suttles v. Colvin, 654 F. App'x 44, 47 (2d Cir. 2016) (summary order) (alterations in original) (quoting Williams v. Comm'r Soc. Sec., 236 F. App'x 641, 644 (2d Cir. 2007) (summary order); citing Pollard, 377 F.3d at 194)); see also Collins v. Comm'r of Soc. Sec., 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) (citations and quotation marks omitted) ("While documents generated after the ALJ's decision may bear upon the severity and continuity of impairments existing during the relevant period, if the new evidence concerns only the claimant's condition after the relevant time period, a remand for consideration of this evidence is not appropriate.").

Courts have determined that the Appeals Council did not err in concluding that evidence did not relate to the relevant time period where the evidence was created after the relevant date, it did not explicitly refer to the relevant time period, the author of the evidence did not have an established treatment relationship with the plaintiff during the relevant time period, and/or the opinion did not demonstrate greater limitations than the ALJ found.  See Pascal T. v. Berryhill, No. 5:17-CV-01347 (MAD), 2019 WL 316009, at *5 (N.D.N.Y. Jan. 24, 2019) (concluding that the "report reflected a current assessment of [the p]laintiff's condition as of August 2017, without relating to his functionality or

11

symptomatology back to the relevant period on or before the ALJ's . . . decision."); Carbee v. Comm'r of Soc. Sec., No. 1:17-CV-0051 (GTS), 2018 WL 333516, at *6 (N.D.N.Y. Jan. 9, 2018) ("Not only do the records . . . concern a later period, they do not strongly suggest that [the p]laintiff's conditions were far more serious than at the time of the ALJ's decision."); Tammie S. v. Berryhill, No. 3:18-CV-174 (CFH), 2019 WL 859263, at *6 (N.D.N.Y. Feb. 22, 2019) (citation omitted) ("Although the questionnaire is dated just seven weeks after the ALJ hearing decision, it is not clear from the record that it is meant to be retroactive.  Indeed, the record states that [the] plaintiff has noted 'an increase in frequency' since her last visit, suggesting a change in her pattern of headaches.  There is no indication in the record that this change occurred during the relevant time period."); David S. v. Comm'r of Soc. Sec., No. 3:20-CV-1392 (DJS), 2022 WL 2869602, at *9 (N.D.N.Y. July 21, 2022) (concluding that the evidence did not relate to the relevant time period because the authoring provider "declined to specify what period her new opinion covered, stating that the start period is 'unknown to me' and only noting that her first examination of [the p]laintiff occurred" five months before the ALJ's decision); Collins v. Comm'r of Soc. Sec., 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) ("All of the records post-date the ALJ's decision.  None of the medical professionals appear to have treated [the plaintiff] during the relevant time period and none offer a retrospective opinion of his condition.  Rather than shedding light on [the plaintiff's] condition during the relevant time period, the new evidence suggests at most that his condition worsened after the ALJ's decision."); Guerra v. Comm'r of Soc. Sec., No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *8 (W.D.N.Y. Aug. 7, 2018) (determining that Appeals Council did not err in declining to consider new evidence because the

records were from two months after the ALJ's decision, there was no evidence of a
longitudinal treatment relationship between the plaintiff and the provider, and the
"[p]laintiff has not identified any information in her physicians' notes from after the
relevant time period that demonstrates limitations greater than those found by the
ALJ."); Smith v. Comm'r of Soc. Sec., 351 F. Supp. 3d 270, 285 (W.D.N.Y. 2018)
("While the medical source statement indicates that [the provider] has known [the
p]laintiff for two years, the record does not appear to contain any treatment records from
her.  Neither [the p]laintiff's nor [the d]efendant's medical summary includes a
discussion of [the p]laintiff[']s treatment with [the provider].").

By contrast, courts have concluded that the Appeals Council erred, and the new
evidence related to the relevant time period, where the author treated the plaintiff for the
underlying condition(s) throughout the relevant time period, the evidence explicitly
referred to the relevant time period, and/or the new evidence did not suggest a
worsening or a change but a continuation of the plaintiff's condition(s) from the relevant
time period.  See Tammie S., 2019 WL 859263, at *7 (concluding that post-hearing
deposition testimony "may apply to the relevant period[]" because the "deposition
testimony provides no indication of a worsening or change in the status of [the] plaintiff's
diagnoses to suggest that it is relevant only to the post-hearing time period[,]" and "the
deposition evidence was taken close in time to the ALJ's hearing decision --
approximately two months later – and comes from a treating provider with a clear
longitudinal history of treatment[.]"); Lydia L. v. Saul, No. 3:19-CV-1084 (DJS), 2020 WL
7629450, at *4 (N.D.N.Y. Dec. 22, 2020) ("[The] Questionnaire expressly covers the
period between April 24, 2016 until November 30, 2018, and therefore relates to the

period prior to the ALJ's November 7, 2020 disability determination."); Rayburn v.

Colvin, No. 6:14-CV-06500 (MAT), 2015 WL 8482780, at *3 (W.D.N.Y. Dec. 9, 2015)

("As Dr. Mitchko made clear in his second opinion, the onset date of [the] plaintiff's

Parkinson's disease was March 31, 2012.  Therefore, the information related to the

Parkinson's diagnosis – which included both of Dr. Mitchko's functional assessments –

did relate to the relevant time period.  Moreover, Dr. Mitchko had established a

treatment relationship with [the] plaintiff long before the ALJ's decision, a further

indication that his opinion on [the] plaintiff's overall condition related to the relevant time

period."); Pferrer-Tuttle v. Colvin, No. 1:14-CV-00727 (MAT), 2015 WL 5773524, at *6

(W.D.N.Y. Sept. 30, 2015) ("Contrary to the Appeals Council's finding, however, [the]

report was relevant to the applicable time period.  The report does not specifically state

any dates of applicability, but [the] plaintiff had a longstanding treatment relationship

with [the author] which predated the ALJ's decision and which was apparent from the

administrative record.").

Here, neither the June nor August 2020 medical opinions refer to the relevant

time period.  See T. at 64-65, 70-71.  The medical opinions do not state that they are

meant to be applied retroactively.  See id. at 64-65, 70-71.  The opinions also speak in

terms of present and future tenses such as whether plaintiff "would" be off task at work

or whether her conditions are "expected to produce" certain outcomes.  Id. at 64-65, 70-

71.  They do not explicitly speak in terms of plaintiff's symptoms and ability to function

from October 23, 2017, through May 19, 2020.  See id. at 64-65, 70-71.  However, Dr.

Minhas states in his August 2020 opinion, that his conclusions are "[b]ased on history[.]"

Id. at 64.  The July 2020 treatment note refers to plaintiff's treatment from April 2020,

14

which is within the relevant time period.  See id. at 66.  Plaintiff testified that Dr. Minhas had been treating her for her migraines "[s]ince 2014 to 2015" and the first treatment note from Dr. Minhas that is in the record and the ALJ reviewed is from January 2017. Id. at 38-39, 605.  Additionally, the opinions and treatment note do not indicate a change or worsening in plaintiff's symptoms; rather, they indicate a continuation of her migraines, the possible side effects stemming therefrom, and continued improvement using Botox.  See id. at 63-71.  Based on the treatment records from Dr. Minhas that the ALJ reviewed it appears that during the relevant time period, plaintiff's migraine medications had to be changed and increased; she was having headaches with increased frequency and severity; despite medication, she was still having frequent headaches; and it was not until she started receiving Botox injections in June 2019, that the frequency started to decrease, although her migraines were still "quite strong[.]"  T. at 611, 614, 720, 1043, 1036-37.  The new evidence appears to reflect continued improvement in plaintiff's migraine symptoms but that she still had limitations stemming therefrom.  See id. at 64-65, 70-71.  It is plausible that during the relevant time period, particularly before receiving Botox injections, plaintiff had worse limitations than the ALJ opined.  As Dr. Minhas did not state whether his opinions applied to plaintiff's functioning at the time the opinions were given or to her functioning during the relevant period, the Court cannot definitively conclude what plaintiff's limitations would have been during the relevant period.

However, because of plaintiff's years-long treatment relationship with Dr. Minhas, his opinions "corroborat[ing] an ailment that existed before the ALJ rendered his decision[,]" and the evidence being completed shortly after the ALJ's decision, the Court

concludes that the new evidence relates to the relevant time period. <u>Collato v. Colvin</u>, No. 15-CV-6194 (JWF), 2016 WL 3351581, at *4 (W.D.N.Y. June 13, 2016) (citing <u>O'Connell v. Astrue</u>, 11-CV-1099S, 2013 WL 1337282, at *4 (W.D.N.Y. Mar. 29, 2013) ("[N]ew evidence is not material if it tends to establish only 'a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition[.]'"); <u>see also</u> <u>Tammie S.</u>, 2019 WL 859263, at *7.

For evidence to be "material," there must be also "a reasonable possibility that the new evidence would have influenced the ALJ to decide the claimant's application differently." <u>Suttles</u>, 654 F. App'x at 47. Plaintiff argues that "Dr. Minhas assesses greater limitations than the ALJ's RFC determination and demonstrate[es] that [p]laintiff is disabled." Dkt. No. 13 at 14. The Commissioner argues that the evidence "would be unlikely to change the ALJ's decision[]" because "[t]he additional evidence [] is largely consistent with the ALJ's decision" and "[o]nly Dr. Minhas's estimates that [p]laintiff's symptoms would cause her to be off-task more than 10% of the workday are inconsistent with the ALJ's decision[.]" Dkt. No. 17 at 7. The Commissioners contends that "it is unlikely that these estimates alone would 'alter the weight of the evidence before the ALJ so dramatically as to require the Appeals Council to take the case[]'" because the estimates are unsupported by Dr. Minhas' July 2020 treatment note and are internally inconsistent with the other conclusions in Dr. Minhas' opinions. <u>Id.</u> at 7-8 (citation omitted).

As to Dr. Minhas' July 2020 treatment note, it is not likely that it would change the outcome of the ALJ's decision as it states the same thing that the ALJ considered and discussed from other treatment notes that were before him—that plaintiff's migraines

were improving with Botox.  See T. at 18 (citing T. at 1035,1037) ("She testified and reported to her treatment provider that botox has help[ed] decrease[] the frequency of migraines."); see also T. at 38-39.

Next, as the Commissioner states, many of the conclusions in Dr. Minhas' opinions are in terms of whether plaintiff "may" experience some symptoms and that the symptoms are "variable."  Dkt. No. 17 at 7; see also T. at 64, 70-71.  In his decision, the ALJ noted that plaintiff would get migraines two-to-three or three-to-four times a week, and "she experiences photophobia, phonophobia, and osmophobia with her migraines." T. at 15, 17-18 (citing T. at 36, 45, 656, 1033-39).  However, there is a reasonable probability that Dr. Minhas' medical opinions would change the outcome of the ALJ's decision because there was no opinion before the ALJ specifically addressing plaintiff's migraines and their impact on plaintiff's ability to stay on task and attend work, and the ALJ did not discuss any possible limitations stemming from plaintiff's migraines besides "photophobia, phonophobia, and osmophobia."  T. at 17.

To be sure, the ALJ discussed a medical opinion from plaintiff's treating mental health provider Sandy Rivera, LCSW, which concluded that plaintiff would be off task for thirty-three percent of a workday, and that plaintiff had moderate limitations maintaining attention and concentration.  See id. at 20 (citing T. at 999-1000).  The ALJ discounted Ms. Rivera's opinion because it was "not consistent with [plaintiff] having a mildly impaired attention and concentration and a goal directed thought process at the consultative examination."  Id. (citing T. at 656).  Dr. Minhas opined less severe off-task limitations than Ms. Rivera which could make it less likely that Dr. Minhas' opinions would change the ALJ's decision.  See Mendoza v. Berryhill, 287 F. Supp. 3d 387, 398-

99 (S.D.N.Y. 2017) ("[B]ecause Dr. Ellis's report found more severe restrictions than other medical opinions considered by the ALJ, a 'realistic possibility' existed that the ALJ might have reached a different outcome had the ALJ considered Dr. Ellis's report.). The ALJ also had Dr. Minhas' treatment notes from January 2017 to February 2020. See T. at 605-18, 718-21, 1034-39; see also Laura D. v. Comm'r of Soc. Sec., No. 5:21-CV-445 (LEK/TWD), 2022 WL 4181570, at *14 (N.D.N.Y. Sept. 13, 2022) ("[T]his court cannot conclude the new information in Dr. Humphrey's opinion creates 'a reasonable possibility' the Commissioner would be prompted to decide [the p]laintiff's disability claim differently[]" because the ALJ already had the benefit of Dr. Humphrey's treatment notes and cited them in his RFC determination with regard to [the p]laintiff's ability to sit, stand, walk and other exertional and postural limitations.  Dr. Humphrey's opinion does not explain any clinical basis for her opinion or explain the opinion's inconsistency with contemporaneous treatment notes and [the p]laintiff's own description of her daily activities."), report and recommendation adopted, 2022 WL 4591841 (N.D.N.Y. Sept. 30, 2022).

However, Dr. Minhas' opinions also appear consistent with FNP Nicholas Kenhart's opinion that plaintiff would be off task for more than ten percent but less than fifteen percent of a workday.  See T. at 890.  FNP Kenhart treated plaintiff for her back impairments and pain.  The consistency between Dr. Minhas' opinions and FNP Kenhart's opinion could possibly change the ALJ's decision.  See Patrick M. v. Saul, No. 3:18-CV-290 (ATB), 2019 WL 4071780, at *8 (N.D.N.Y. Aug. 28, 2019) ("To the extent that Dr. Khan and Dr. Emery have similar opinions about such limitations that were

inconsistent with the ALJ's RFC findings, the existence of a consistent second medical opinion would create a reasonable probability of influencing the ALJ's decision.").

Plaintiff also asserts that Dr. Minhas' opinions are consistent with the evidence in the record that demonstrates plaintiff's continued migraines, which would occur multiple times a week despite medications and Botox; and that when she has a migraine, she tried to lay down, but it could sometimes take hours for her to recover.  See Dkt. No. 13 at 17-18 (citing T. at 39-41, 64-70, 571, 605-11, 614, 617-18, 852, 1034, 1036).  The Commissioners contends that Dr. Minhas' opinions are inconsistent with each other—as the two opinions came to different conclusions about the amount plaintiff would be off task—and inconsistent with the opinions from consultative examiner Gilbert Jenouri, M.D., and state agency consultants R. Abueg, M.D., S. Sonthineni, M.D.  See Dkt. No. 17 at 14-15.

To the extent Dr. Minhas' June 2020 opinion indicates that plaintiff would be off task fifteen-to-twenty percent of the time and his August 2020 opinion indicates that she would be off task ten-to-fifteen percent of the time, the Court does not agree with the Commissioner that this is necessarily inconsistent.  See T. at 65, 71.  Rather, this could indicate that plaintiff's migraines continued to improve over time; thus, the percentage she would be off task was decreasing.  See id. at 65, 71.  Next, Dr. Jenouri, in his physical consultative examination, did not discuss plaintiff's migraines in his recitation of plaintiff's complaints or medical history, or in his diagnoses.  See T. at 660, 662.  Although Dr. Jenouri listed plaintiff's migraine medications in her list of "current medications", it is unclear whether he actually considered plaintiff's migraines and their effect on her functioning in making his determinations.  See id. at 660; see also Dkt. No.

17 at 15, n.9.  Additionally, in conducting a review of the record, Drs. Abueg and Sonthineni did not have Dr. Minhas' opinions to consider.  See T. at 94-95, 124-25.  It is possible that after considering medical opinions from plaintiff's treating neurologist, that they would have found plaintiff to be more limited, which would in turn alter the ALJ's determination as he found their opinions to be persuasive.  See id. at 19.

Further, if the ALJ adopted Dr. Minhas' opinions plaintiff would likely be precluded from work.  Dr. Minhas concluded that plaintiff would be off task somewhere between ten and twenty percent of a workday.  See T. at 65, 71.  The VE testified that employer tolerance for time off task is "[l]ess than 10 percent off task" or "[n]ine percent often – off task[.]"  T. at 54; see also Michael B. v. Saul, No. 3:19-CV-776 (CFH), 2020 WL 5292055, at *10 (N.D.N.Y. Sept. 4, 2020) (internal citation omitted) ("[T]he undersigned is unable to conclude with certainty that the additional evidence does not show a reasonable probability that it would change the outcome of the decision[]" because "Dr. Dean opined that [the] plaintiff would be expected to be absent more than four days per month.  If this statement were credited, it would preclude full-time employment based on the testimony of the vocational expert.").  Based on the foregoing, there is a reasonable probability that Dr. Minhas' opinions would change the ALJ's decision; thus, they are material.  As the evidence submitted to the Appeals Council was new and material, the Appeals Council erred in not considering it and remand is warranted on this ground.

## 2. Good Cause

The Commissioner argues that the Appeals Council was not required to consider plaintiff's new evidence because "there is no indication that [p]laintiff had good cause for

not informing SSA about or submitting the evidence earlier in the administrative process." Dkt. No. 17 at 8 (citing 20 C.F.R. § 404.970(b)).  Plaintiff contends that "[t]his argument must be rejected as an improper *post hoc* argument because the Appeals Council did not refuse to consider the new evidence on that ground." Dkt. No. 18-1 at 2 (citing Garland v. Dai, 141 S. Ct. 1669, 1679 (2021)).

"The Appeals Council will only consider additional evidence" that is new and material "if [the plaintiff] show[s] good cause for not informing [the SSA] about or submitting the evidence[.]" 20 C.F.R. §§ 404.970(b), 416.1470(b).  Good cause can be shown if the plaintiff was misled by the SSA, the plaintiff "had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier"; or "[s]ome other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier." Id. §§ 404.970(b)(1)-(3), 416.1470(b)(1)-(3).

As plaintiff states, the Appeals Council did not decline to consider the new evidence because plaintiff failed to show good cause for not submitting the evidence earlier in the administrative process.  See T. at 1-3; see also Dkt. No. 18-1 at 2.  Rather, the Appeals Council stated that the newly submitted "evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before May 19, 2020." T. at 2. The Appeals Council determined that there was "no reason under [its] rules to review the Administrative Law Judge's decision." Id. 1.

"Courts across the country disagree on whether a federal court on judicial review can consider whether good cause for the late-submitted evidence exists when the

Appeals Council did not cite lack of good cause as its basis for rejecting the evidence."
Emerson v. Kijakazi, No. 1:21-CV-307, 2022 WL 1004584, at *7 (M.D.N.C. Apr. 4, 2022)
(citations omitted) (collecting cases from district courts across the country, some of
which refuse to consider whether the plaintiff established "good cause" where the
Appeals Council did not address it, and others that analyze whether the plaintiff showed
"good cause" despite the Appeals Council not stating it as a rationale), report and
recommendation adopted, 2022 WL 17683347 (M.D.N.C. May 10, 2022).  The Second
Circuit has not explicitly answered this question.  However, in a 2009 unpublished case,
the Second Circuit refused to analyze the Commissioner's argument that the new
evidence did not pertain to the relevant time period as that was not a reason that the
Appeals Council provided in declining to review the ALJ's decision.  See Newbury v.
Astrue, 321 F. App'x 16, 18 (2d Cir. 2009) (summary order).  The Court explained that
"[a] reviewing court may not accept appellate counsel's post hoc rationalizations for
agency action."  Id. (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)) (quotation
marks omitted).

District courts in the Second Circuit have declined to address the "good cause"
requirement where the Appeals Council did not assert it as a reason for declining to
review new evidence.  See Leanne S. v. Comm'r of Soc. Sec., No. 3:20-CV-1447
(CFH), 2022 WL 4448245, at *5 (N.D.N.Y. Sept. 23, 2022) (citation omitted) (declining
to consider the good cause issue as it was not a rationale provided by the Appeals
Council); see also Hissin v. Comm'r of Soc. Sec., No. 17-CV-1264 (FPG), 2019 WL
4253899, at *3 (W.D.N.Y. Sept. 9, 2019) (citation omitted) ("The Commissioner also
argues that [the plaintiff] did not provide good cause to justify the late filing.  These

22

arguments fail, however, because the Appeals Council did not articulate any of these reasons to justify its conclusion."); accord King v. Comm'r of Soc. Sec., No. 19-CV-6222 (FPG), 2020 WL 5248473, at *2, n.3 (W.D.N.Y. Sept. 2, 2020).

These decisions are supported by the well understood principle, that "reviewing courts remain bound by traditional administrative law principles, including the rule that judges generally must assess the lawfulness of an agency's action in light of the explanations the agency offered for it rather than any *ex post* rationales a court can devise." Garland, 141 S. Ct. at 1679 (2021); see also Fox Television Stations, Inc. v. Fed. Commc'ns Comm'n, 489 F.3d 444, 455 (2d Cir. 2007) (citation omitted) ("Reviewing courts 'may not supply a reasoned basis for the agency's action that the agency itself has not given.'"), rev'd and remanded on other grounds sub nom. F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502 (2009); see also Dkt. No. 18-1 at 2.

Based on the foregoing, the Court declines to consider whether plaintiff has shown "good cause" for failing to present the evidence sooner in the administrative process because the Appeals Council did not decline to review the ALJ's decision on that ground.  In sum, because the evidence that plaintiff submitted is new and material, the Appeals Council erred in declining to review the ALJ's decision and remand is warranted on this ground.[6]

---

[6] Plaintiff also argues that the Appeals Council erred in summarily declining to review the ALJ's decision without discussing the persuasiveness of Dr. Minhas' medical opinions in accordance with 20 C.F.R. §§ 404.1520c, 416.920c.  See Dkt. No. 13 at 14-15.  As the Court has already determined that remand is warranted based on the Appeals Council error in declining to review the ALJ's decision, the Court declines to address whether the Appeals Council erred in using boilerplate language in its denial of review.

## B.  ALJ's RFC Determination

Although the Court has already concluded that remand is warranted for consideration of the new evidence, the Court will address the parties' remaining arguments concerning the ALJ's decision to provide further guidance on remand.  See Patrick M. v. Saul, No. 3:18-CV-290 (ATB), 2019 WL 4071780, at *9 (N.D.N.Y. Aug. 28, 2019) (proceeding to review the ALJ's decision after determining that remand was warranted based on the Appeals Council error and stating that "[e]ven if the Court focuses on the decision of the ALJ in this action (and not that of the Appeals Council), the case must be remanded for further consideration by the Commissioner."); Tammie S., 2019 WL 859263, at *8-13 (analyzing the ALJ's decision after concluding that remand was warranted based on the Appeals Council's error); Allborty v. Comm'r of Soc. Sec., No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016) ("[T]his court concludes that remand of this case is appropriate because the Appeals Council erred by not granting review of the ALJ's decision based on the newly submitted medical opinion evidence, without any discussion of its reasons for rejecting that new opinion evidence.  While the court will provide some guidance to the parties about how the other issues raised by the plaintiff should be considered on remand, those issues need not be addressed in full given my conclusion that remand is required by virtue of the Appeals Council's error."), report and recommendation adopted, 2016 WL 796071 (N.D.N.Y. Feb. 22, 2016).

In discussing whether the ALJ's decision is supported by substantial evidence, the Court considers the new evidence as part of the entire record.  See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996) ("When the Appeals Council denies review after considering new evidence, [the Court] simply review[s] the entire administrative record,

24

which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the" Commissioner.).

### 1. Migraine Limitations

Plaintiff argues that the ALJ erred in failing to assess whether her migraines would cause her to be off task or absent from work.  See Dkt. No. 13 at 16.  Plaintiff contends that Dr. Minhas' opinions show that plaintiff's migraines would cause her to be off task and miss work and that the opinions are consistent with the record.  See id. at 16-19.  Plaintiff also argues that the ALJ failed to support his RFC determination as to light and sound limitations with any record evidence.  See id. at 19.

The Commissioner asserts that Dr. Minhas' opinions are not well-supported because he failed to provide an explanation for his conclusions, that the conclusions are internally inconsistent, and that Dr. Minhas' opinions are inconsistent with the opinions from Drs. Abueg, Sonthineni, and Jenouri.  See Dkt. No. 17 at 14-15.  The Commissioner also argues that "[t]he ALJ's noise and light restrictions are based on Dr. Abueg's findings and [p]laintiff's own reports about the types of symptoms she experienced with her migraine headaches."  Id. at 16.

### a. Off-Task and Absenteeism Limitations

In making his RFC determination, the ALJ concluded that Drs. Abueg and Sonthineni's initial and reconsideration disability determinations and Dr. Jenouri's consultative examination were persuasive.  See T. at 19.  Neither Dr. Abueg nor Dr. Sonthineni had the ability to review Dr. Minhas' opinions and neither discussed whether plaintiff's migraines would impact her ability to stay on task or consistency attend work. See id. at 94-95, 124-25.  Similarly, in his consultative evaluation, Dr. Jenouri did not discuss plaintiff's migraines as one of plaintiff's complaints or as part of her medical

25

history.  See id. at 660.  Dr. Jenouri also did not diagnose plaintiff with migraines.  See T. at 662.  As it is not evident that these opinions considered plaintiff's migraines and their impact on her ability to stay on task or attend work, the opinions cannot constitute substantial evidence in support of the ALJ's decision not to include such limitations. See Jazina v. Berryhill, No. 3:16-CV-01470 (JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017) (citing Tarsia v. Astrue, 418 F. App'x 16, 18 (2d Cir. 2011) (summary order)) (additional citations omitted) ("[T]he the Second Circuit ordered remand where an ALJ relied on a state agency medical consultant's opinion instead of a treating physician's opinion, because it was not clear whether the state agency medical consultant had reviewed all of the relevant medical information, including the treating physician's functional capacity assessment. . . .  [Here, t]he ALJ did not acknowledge that the state agency medical consultants failed to review the full record, including the [treating physicians' opinions . . . .  Rather, the ALJ incorrectly asserted that the state agency medical consultants 'based their findings on a thorough review of the record.'"); Figueroa v. Saul, No. 18-CV-4534 (JLC), 2019 WL 4740619, at *29 (S.D.N.Y. Sept. 27, 2019) ("Because [the state agency consultant] did not review all of [the plaintiff's] relevant medical information and his assessed limitations were not consistent with the record as a whole, the Court cannot say that the ALJ's physical RFC determination, which relied heavily upon [the state agency consultant's] opinion, was supported by substantial evidence").  But see Renalda R. v. Comm'r of Soc. Sec., No. 3:20-CV-00915 (TWD), 2021 WL 4458821, at *9 (N.D.N.Y. Sept. 29, 2021) ("[T]he mental health records [the p]laintiff identifies, some of which were submitted after Dr. McIntyre's review, do not change the picture of [the p]laintiff's mental functioning, such that the ALJ

could no longer rely on the State agency consultant's opinion formulating the RFC.");
Renee L. v. Comm'r of Soc. Sec., No. 5:20-CV-00991 (TWD), 2022 WL 685285, at *6-8
(N.D.N.Y. Mar. 8, 2022) (discussing the staleness of a state agency consultant's
medical opinion and concluding that an ALJ does not err in relying on the consultant's
opinion, even if that opinion did not consider all of the plaintiff's evidence, where the
additional evidence does not undermine the opinion or change the picture of the
plaintiff's functioning, and the ALJ discussed the additional evidence).

To be sure, the ALJ cited treatment records and plaintiff's hearing testimony that
discussed the frequency of plaintiff's migraines, that Botox decreased their frequency,
and that she experienced photophobia, phonophobia, and osmophobia with her
migraines. See T. at 18 (T. at 38, 321-446, 594, 597, 605-606, 610, 616, 618, 718, 721,
1035, 1037, 1039).  The ALJ did not, however, discuss whether plaintiff's migraines
would cause any other symptoms or limitations. See id.  Plaintiff testified that despite
Botox decreasing the frequency of her headaches, "[t]he severity is largely they're a lot
more painful." Id. at 39.  She testified that when she gets a migraine, she tries to lay
down and will be in her room "pretty much all day" or for "[t]welve hours." Id. at 40.  She
testified that she gets migraines "[t]hirteen to 14 [times] a month at minimum." Id. at 41.
When she preemptively takes her medication because she can feel a headache coming
on, she gets migraines eight or nine times a month. See id.  The ALJ did not discuss
whether plaintiff's migraines would cause her to miss work or be off task while at work
or miss work entirely despite her need to lay down, possibly all day, multiple times a
month. See id. at 17-18.

Dr. Minhas' medical opinions indicate that plaintiff's migraines would cause her to be off task between ten and twenty percent of a workday.  See T. at 65, 71.  Although the ALJ discussed LCSW Rivera's and FNP Kenhart's opinions which also opined off task limitations, they did so not in the context of plaintiff's migraines.  See id. at 890-91, 999-1000.  Dr. Minhas' opinions also appear consistent with plaintiff's testimony that her migraines require her lay down all day indicating that her migraines may require her to be off task or leave work.  See id. at 65, 71, 38-39.  As the ALJ did not discuss whether plaintiff's migraines would cause her to be off task or miss work—limitations which appear supported by plaintiff's testimony and Dr. Minhas' opinions—the ALJ's failure to include those limitations in his RFC determination is not supported by substantial evidence.  See Rivers v. Kijakazi, No. 21-CV-820 (JCM), 2022 WL 2901578, at *19 (S.D.N.Y. July 22, 2022) (citation and quotation marks omitted) ("The ALJ's failure to analyze the potential limiting impact that [the p]laintiff's alleged [migraine and hyperglycemia] symptoms could have on [the p]laintiff's attendance and ability to limit herself to normally-scheduled breaks, constitutes reversible error.  Despite finding that [the p]laintiff's migraines were severe, the ALJ never explain[ed] why such a condition does not warrant a limitation in the RFC."); Davila v. Comm'r of Soc. Sec., No. 16-CV-4774 (KAM), 2018 WL 5017748, at *21 (E.D.N.Y. Oct. 16, 2018) (citations omitted) ("Despite the ALJ's determination that [the] plaintiff's migraines were 'severe' and the significance of [the] plaintiff's reported limitations due to migraines, the 2014 ALJ Decision's RFC analysis contains only a single paragraph regarding [the] plaintiff's migraines.  Nowhere in this discussion does the 2014 ALJ Decision clearly state any basis to conclude that [the] plaintiff's migraines do not impact these abilities or

28

capacities, or even acknowledge the potential limiting impact that [the] plaintiff's alleged symptoms could have."). On remand, the ALJ should discuss whether plaintiff's migraines cause limitations in her ability to remain on task or attend work.

### b. Light and Sound Limitations

"The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." Schillo v. Kijakazi, 31 F.4th 64, 74 (2d Cir. 2022) (quotation marks omitted) (quoting Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012)). "'Substantial evidence' is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014). Here, the ALJ determined that plaintiff could "tolerate a moderate noise intensity level as defined in the DOT/SCO. She can tolerate occasional exposure to light brighter than that typically found in an indoor work environment such as an office or retail store." T. at 16. These determinations are supported by substantial evidence.

First, as to the noise limitations, as the Commissioner states, Dr. Abueg opined that plaintiff should "[a]void concentration exposure" to noise. T. at 94; see also Dkt. No. 17 at 17. Dr. Sonthineni determined that plaintiff had no environmental limitations. See T. at 124. The ALJ did not acknowledge this difference between the two state agency consultants' opinions. See id. at 19. Rather, he stated that "it was determined that [plaintiff] should avoid concentrated exposure to noise[.]" Id. Nevertheless, the ALJ determined that Dr. Abueg's opinion was persuasive and there is no medical opinion or

evidence in the record suggesting that plaintiff is more limited in her ability to tolerate noise than the ALJ determined.

In his opinion, when asked to "explain environment limitations[,]" Dr. Abueg wrote, "Advised to avoid hazards due to migraine history."  T. at 94.  Contrary to the Commissioner's assertion, Dr. Abueg did not attribute the opined noise limitation to any of plaintiff's impairments, let alone her migraines.  See Dkt. No. 17 at 17; see also T at 94.  Additionally, it is not entirely clear whether a limitation to avoiding "concentrated exposure" to noise is synonymous to avoiding "moderate" noise.  T. at 16, 94.  The Department of Labor categorizes noise by five levels: "Very Quiet", "Quiet", "Moderate", "Loud", "Very Loud".  U.S. Dep't of Labor, Selected Characteristic of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D. Environmental Conditions (1993).  Examples of "[m]oderate" noise are listed as "business office where type-writers are used; department store; grocery store; light traffic; [and] fast food restaurant at off-hours[.]"  Id.  Neither plaintiff nor the Commissioner presented authority as to what it means to avoid "concentrated exposure" to noise.  T. at 94; see also Dkt. No. 13 at 10; Dkt. No. 17 at 17.  Plaintiff testified that when she is experiencing a headache, she tried to "avoid . . . a lot of noise."  T. at 40.

This Court has previously concluded that jobs which have a moderate noise level are consistent with an RFC limiting the plaintiff to avoiding concentrated exposure to excessive noise.  See Heim v. Comm'r of Soc. Sec., No. 1:16-CV-1280 (DJS), 2018 WL 1621521, at *7-8 (N.D.N.Y. Mar. 30, 2018); see also Dkt. No. 17 at 17.  Plaintiff does not present evidence that indicates that she is more limited than the ALJ determined or that she cannot tolerate moderate levels of noise.  See Dkt. No. 13 at 19-20.  As plaintiff

has not identified contrary evidence and there is a medical opinion supporting the RFC determination, this determination is supported by substantial evidence.  See Heim, 2018 WL 1621521, at *8 (determining that "[t]he evidence of record and the ALJ's analysis indicates that he properly accounted for [the p]laintiff's testimony regarding her hearing impairment in his RFC with a limitation that is not impermissibly vague" because the plaintiff did not allege hearing loss in the initial determination, did not raise it during the consultative examination, and engaged in activities of daily living including listening to the radio and watching television).

The Court comes to a similar conclusion as to the ALJ's determination limiting plaintiff to "occasional exposure to light brighter than that typically found in an indoor work environment such as an office or retail store[.]"  T. at 16.  Plaintiff states that "[t]he ALJ provides absolutely no discussion whatsoever how he arrived at these conclusions and provides no explanation" for his conclusions.  Dkt. No. 13 at 19.  The Commissioner argues that the ALJ's RFC limitation "was the ALJ's reasonable attempt to accommodate [p]laintiff's reported symptoms."  Dkt. No. 17 at 17.

Plaintiff testified that when she is experiencing a migraine, she tries to "avoid bright lights[.]"  T. at 40.  She also told Dr. Minhas that she experiences photophobia.  See id. at 1036.  "Photophobia, or photalgia, refers to '[l]ight-induced pain, especially of the eyes.'"  Anair v. Colvin, No. 2:14-CV-169, 2015 WL 5089316, at *6, n.3 (D. Vt. Aug. 26, 2015) (quoting Stedman's Medical Dictionary 1489, 1490 (28th ed. 2006); citing Matts v. Barnhart, 97-CV-9102 (JFK) 2007 WL 187688, at *2 n. 5).  Dr. Minhas' June 2020 opinion lists photophobia as one of plaintiff's symptoms.  See id. at 70.  However,

no medical opinion opined a limitation to plaintiff's ability to tolerate light.  See id. at 64-65, 70-71, 660-62, 94-95, 124-25, 890-91.

"Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) (quoting Mongeur, 722 F.2d at 1040).  Additionally, this Court has rejected a plaintiff's argument that an ALJ erred by basing an RFC limitation on the plaintiff's testimony as opposed to medical evidence.  See Tammy Lynn B. v. Comm'r of Soc. Sec., 382 F. Supp. 3d 184, 195 (N.D.N.Y. 2019) ("There is nothing improper about an ALJ considering medical opinion evidence that assesses [] few or no exertional limitations and then relying in part on the combined force of other record evidence, such as [] subjective testimony, to [] choose to assign certain limitations that result in a *more* restrictive RFC finding."); see also Cheryl E. v. Comm'r of Soc. Sec., No. 5:20-CV-0867 (ML), 2021 WL 5964890, at *7 (N.D.N.Y. Dec. 15, 2021) (citation omitted) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand.").

Plaintiff does not identify any evidence that contradicts the ALJ's determination or indicates that plaintiff is more limited in her ability to tolerate exposure to light.  See Dkt. No. 13 at 19-20.  As such, despite their being no medical opinion opining a light limitation, the ALJ provided a more restrictive opinion to accommodate plaintiff's migraine symptoms.  See T. at 16.  Remand is not warranted on this ground.  See Laurie A. T. v. Kijakazi, No. 8:21-CV-1071 (TJM/DEP), 2022 WL 17342044, at *10, n.9

(N.D.N.Y. Nov. 2, 2022) ("[T]he ALJ's inclusion of any bathroom-related limitation is more restrictive than the provided medical source statements, given that none of those sources opined such a limitation.") (citing Theresa G. v. Saul, 20-CV-0362 (DJS), 2021 WL 1535472, at *5 (N.D.N.Y. Apr. 19, 2021) ("Given the lack of any medical opinion stating that [the p]laintiff needed such an accommodation, it would not have been error for the ALJ to omit it from the RFC.  The fact that a limitation was included despite its absence from any medical opinion means simply that the RFC was 'more generous' than the medical opinions required and 'where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand.'")), report and recommendation adopted, 2022 WL 17338813 (N.D.N.Y. Nov. 30, 2022).  Nevertheless, because remand is required for the ALJ to consider Dr. Minhas' medical opinions and off task and absenteeism limitations, the ALJ is encouraged to explain the evidence, subjective and/or objective, supporting each of his RFC limitations including the light and sound limitations.  See Mikus v. Berryhill, No. 6:16-CV-284 (DJS), 2017 WL 1319838, at *8 (N.D.N.Y. Apr. 7, 2017) (finding no error as to a specific issue, but "[n]otwithstanding, because the matter is being remanded, the ALJ should, in assessing the [p]laintiff's RFC, reconsider all opinion evidence of record and determine the proper weight accorded thereto.").

## 2.  Sedentary Work

Plaintiff argues that the ALJ erred in relying on the state agency consultants' opinions to conclude that plaintiff was capable of performing sedentary work because the ALJ did not sufficiently explain his consideration of their opinions in accordance with 20 C.F.R. §§ 404.1502c, 416.920c.  See Dkt. No. 13 at 20-22.  Plaintiff states that, "[m]ost significantly, the RFC is contrary to the substantial medical [evidence] which

shows difficulties with sitting and, particularly, standing." Id. at 22.  Plaintiff also argues that the ALJ erred in relying on plaintiff's activities of daily living to discount FNP Kenhart's medical opinion which opined greater limitations.  See id. at 24-26.  Finally, plaintiff asserts that "the ALJ also failed to adequately consider the factors used in assessing subjective symptoms such as pain." Id. at 24.

The Commissioner argues that the ALJ's determination is supported by substantial evidence from Drs. Abueg, Sonthineni, and Jenouri's opinions.  See Dkt. No. 17 at 18.  The Commissioner contends that it was appropriate for the ALJ to rely on plaintiff's activities of daily living and that the ALJ sufficiently considered plaintiff's subjective complaints.  See id. at 23-24.

In reviewing Drs. Abueg and Sonthineni's opinions, the ALJ concluded that the opinions were "persuasive due to the opinions being supported by an explanation that references evidence from the record, the Doctors' program knowledge, and the opinions are consistent with the evidence in the record." T. at 19 (citing T. at 85-97, 114-27, 666-67, 724-25).

The relevant regulations instruct the ALJ to "explain how[he or she] considered the supportability and consistency factors for a medical source's medical opinions[.]" 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability compares a medical opinion to the "objective medical evidence and supporting explanations presented by a medical source" and consistency compares a medical opinion to "the evidence from other medical sources and nonmedical sources in the claim[.]" Id. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

If an ALJ summarily states that an opinion is supported by the author's explanation or consistent with the record, without more, Courts have repeatedly found error.  See Elizabeth P. v. Comm'r of Soc. Sec., No. 3:20-CV-891 (CFH), 2022 WL 507367, at *6 (N.D.N.Y. Feb. 18, 2022) (citations omitted) ("The ALJ summarily stated that 'Dr. Krantweiss' opinion was persuasive and consistent with the record as well as the examination findings.'  This cursory explanation is insufficient to 'explain how [she] considered the supportability and consistency factors.'"); Kathleen M. v. Comm'r of Soc. Sec., No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *7 (N.D.N.Y. Jan. 10, 2022) (citation omitted) ("[T]he ALJ explained she was 'more persuaded by Dr. Alpert's assessment, as it appears to be better supported and more consistent with the record as a whole.'  This comparative conclusion offers no insight into how the ALJ evaluated Dr. Greene's medical opinion under the supportability and consistency factors."); Conklin v. Kijakazi, No. 21-CV-8486 (JLC), 2023 WL 104829, at *13 (S.D.N.Y. Jan. 5, 2023) (determining that remand was warranted because "the extent of the ALJ's explanation for why she did not find Dr. Gindes' 'opinion . . . persuasive' was that it was 'not consistent with or supported by the objective medical evidence and longitudinal treatment record, [and was] inconsistent with the claimant's admitted activities of daily living set forth above.'"); William B. J. v. Comm'r of Soc. Sec., No. 6:20-CV-0989 (LEK), 2022 WL 344059, at *5 (N.D.N.Y. Feb. 4, 2022) (explaining that the ALJ's conclusion that an "opinion is somewhat persuasive and somewhat consistent with the record because he is the claimant's treating physician[ ]" warranted remand because it "preclude[d] this Court from undertaking meaningful review of [the ALJ's] evaluation of [the] opinion.").

Courts have, however, determined that an ALJ's cursory explanation does not necessitate remand if the ALJ's rationale can be gleaned from the entire decision.  See John L. M. v. Kijakazi, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (quoting Loucks v. Kijakazi, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order)) ("[A]n ALJ's procedural error in failing to explain how he 'considered the supportability and consistency of medical opinions in the record' does not necessarily preclude affirmance of the Commissioner's decision. . . .  [W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole."); accord Adam R. T. v. Comm'r of Soc. Sec., No. 5:21-CV-1170 (FJS/ATB), 2023 WL 1775689, at *2 (N.D.N.Y. Feb. 6, 2023); Domenica Alberta S. v. Comm'r of Soc. Sec., No. 6:21-CV-379 (TJM), 2022 WL 4591873, at *2-3 (N.D.N.Y. Sept. 30, 2022).

Here, the ALJ's cursory, one-sentence explanation concerning Drs. Abueg and Sonthineni's opinions is insufficient to meet the demand of 20 C.F.R. §§ 404.1520c, 416.920c.  See T. at 19.  As plaintiff states, the ALJ did not "explain[] how [the doctors'] conclusions are supported by an explanation, never explain[ed] how their conclusions are consistent with the longitudinal evidence, d[id] not cite supporting medical evidence, and fail[ed] to connect the medical evidence with the opinions and the RFC determination."  Dkt. No. 13 at 22.  Insofar as the Commissioner reiterates Dr. Abueg's and Sonthineni's supporting explanations, the ALJ did not do so himself, nor elaborate in any way the records the consultants relied on and why those records support their conclusions.  See Dkt. No. 17 at 19-20; see also T. at 19.  The regulations require the

ALJ to "explain" his reasoning, not for the Commissioner to do so after the fact.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Similarly, the Commissioner states that the opinions are consistent with "the treatment evidence discussed by the ALJ earlier in his decision (showing improvement with conservative treatment and just mild-to-moderate clinical findings)" and "with Dr. Jenouri's *less restrictive* opinion, which the ALJ also found persuasive[.]"  Dkt. No. 17 at 21.  The ALJ did not explicitly compare Dr. Abueg's and Sonthineni's opinions to any treatment evidence or Dr. Jenouri's opinion.  See T. at 19.  Rather, the ALJ summarily stated that the opinions were "consistent with the evidence in the record."  Id.  This is procedural error because it does not "explain" the ALJ's consideration of the opinion with the evidence of record.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

However, earlier in his decision, the ALJ reiterated the medical evidence concerning plaintiff's neck, back, ankle, and feet impairments.  See id. at 17-18 (citing T. at 632, 676, 682, 688, 709-10, 743, 897, 903, 1049, 1060).  Specifically, the ALJ explained that the treatment evidence reflected that plaintiff had multilevel degenerative disc changes in her spine, she "reported that aqua therapy helped her[]"; "she had decreased flexion and pain on left rotation in her lumbar spine, equal and strong leg strength, she was able to stand and balance on alternating feet and able to stand on her toes[]"; and "[s]he reported that she seems to be gradually improving with overall decreasing pain levels."  T. at 17 (citations omitted).  As to her ankle and feet impairments, the ALJ summarized the relevant evidence as indicating that plaintiff had calcaneal spurring; she had pain upon palpation at the bilateral posterior heels; she had intact gross sensation; she had mildly decreased ranges of motion in her ankle; she had

normal ranges of motion and muscle strength on examination; she "forgot to purchase an over-the-counter ankle brace as previously discussed which [the provider] took that to mean that her pain was not so significant that she thinks about it every day[]"; she was given custom orthotics for her heels; she received steroid injections and underwent physical therapy, medication helped her heel pain; and "[a]lthough [plaintiff] and her podiatrist discussed treatment options including surgery, [plaintiff] agreed to prioritize her hip and back issues over her ankle issues." Id. at 17-18 (citations omitted).

Plaintiff identifies evidence throughout the treatment record which indicates that she reported "back pain is worse when she stands, or lay[s] down or sit[s] for too long and very frustrating," T. at 857, 873, 881; "pain medication does not help" back pain, T. at 857; she was "still unable to stand or walk for longer than 15 to 30 minutes without onset of pain[]", T. at 908; she was "showing minimal signs of improvement with back pain, despite increased strength through hips/glutes with exercises[]", T. at 909; "[s]he states she still struggles to stand for more than 15 minutes before back pain starts to increase[]", T. at 929; she was "still exhibiting severe tenderness through left side low back with palpation and complains of increased pain/soreness with anti-rotational exercises[]", T. at 930; she reported severe limitations in walking community distances, T. at 932; she "continues to have back pain that limits her ability to walk and sit for long periods of time[]", T. at 967; "she is still having back pain with prolonged positions (ie standing, sitting) during daily tasks[]", T. at 970; she "reports she is having some increased back pain today with walking and sitting[]", T. at 973; she was "still experiencing pain with daily activities[]", T. at 985; she had pain in her lower left back with sitting and she reported severe limitations with walking community distances,

vacuuming, dusting, dishes, laundry, changing a bed, T. at 994; her foot pain was "aggravated by walking and standing[]", T. at 699; and her had no improvement in her heel pain, T. at 678.  See Dkt. No. 13 at 22-24.

The ALJ did not discuss these records and the impact they have the potential consistency of Dr. Abueg's and Sonthineni's opinions.  See T. at 19.  To be sure, most of the aforementioned records reflect plaintiff's subjective complaints.  However, the consistency factor looks not only to objective evidence, but to "evidence from other medical sources and nonmedical sources in the claim[.]"  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim."  20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4).  "You or your means, as appropriate, the person who applies for benefits or for a period of disability[.]"  Id. § 404.1502(k); see also 20 C.F.R. § 416.902(q).  The ALJ did not acknowledge the inconsistency between the evidence indicating that plaintiff had recurring pain and she could not walk, sit, or stand for long periods of time without pain, and Drs. Abueg and Sonthineni's opinions that plaintiff could perform sedentary work.  See T. at 19.  On remand, the ALJ should consider all of the evidence in the record and explain the consistency and supportability of the medical opinions as required under 20 C.F.R. §§ 404.1520c(b)-(c) and 416.920c(b)-(c) and with enough detail to warrant meaningful judicial review.

Next, plaintiff argues that the ALJ erred in discounting FNP Kenhart's opinion because of plaintiff's activities of daily living.  See Dkt. No. 13 at 24-25.  The ALJ stated that plaintiff "reported to taking care of her ill husband, walking her child from school, cooking and cleaning.  These activities do not support a finding that [plaintiff] is unable

to sit, stand/walk for less than 8 hours in an 8-hour workday." T. at 19. The ALJ also asserted that plaintiff's ability to care for her husband and walk her child to school was "consistent with being absent on a consistent basis." Id.

The Second Circuit recently determined that in the case before it, the plaintiff's "ability to engage in certain activities of daily living—such as caring for her two children, preparing meals and washing dishes, and driving to her medical appointments" did not "provide[] substantial record evidence to discount" the plaintiff's treating provider's medical opinion. Colgan v. Kijakazi, 22 F.4th 353, 363 (2d Cir. 2022). The Court reiterated its "powerful[] explan[ation]" that when a claimant "chooses to endure pain in order to pursue important goals, such as attending church and helping his wife on occasion go shopping for their family, it would be a shame to hold this endurance against him . . . unless his conduct truly showed that he is capable of working." Id. (quoting Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)). However, "*Colgan* did not establish a categorical rule prohibiting ALJs generally from considering a claimant's daily activities in an RFC assessment." Snyder v. Comm'r of Soc. Sec., No. 22-277-CV, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) (summary order). Following Colgan, the Second Circuit, in Schillo v. Kijakazi, determined that the plaintiff's "testimony about her daily activities—including her ability to do chores around her house, bathe, dress, and use her cellphone—lends some support to the ALJ's findings that both [treating physicians'] opinions are inconsistent with the objective medical evidence." Schillo v. Kijakazi, 31 F.4th 64, 78, n.4 (2d Cir. 2022). The Schillo Court cited Colgan and noted that the plaintiff "did not testify that she persevered through tremors or pain when completing all activities. For instance, she reported no difficulty with fine or gross hand

or finger manipulation when doing her laundry, cleaning her home, or doing the dishes." Id.  The Court explained that "[r]egardless of whether this testimony . . . bolsters what the ALJ found after a thorough review of the record: that during the relevant period, Schillo did not have a total inability to use her hands such that it would have precluded her from performing her past relevant work."  Id.

This case is more like Colgan, than Schillo (although both apply the treating physician rule which is inapplicable here).  Here, the ALJ relied on plaintiff's ability to "tak[e] care of her ill husband, walk[] her child from school, cook[,] and clean[]" to discount FNP Kenhart's opinion that plaintiff can sit, stand, and walk for less than eight hours in an eight-hour workday and would likely miss work.  T. at 19.  The ALJ did not explain how any of the listed activities indicate that plaintiff would be more likely to tolerate sitting at a job for roughly six hours a day with occasional walking or standing— as required for sedentary work—or would be able to show up to work for the number of requisite days.  See id.; see also Stacy D. v. Comm'r of Soc. Sec., 358 F. Supp. 3d 197, 205 (N.D.N.Y. 2019) (citation omtited) ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday.  Sitting capacity should generally total about six hours of an eight-hour workday.").

As plaintiff points out, there are records that indicate that plaintiff had trouble standing for longer than fifteen to thirty minutes; she reported severe limitations with walking community distances, dusting, doing dishes, and changing a bed; and she had pain when sitting for too long.  See Dkt. No. 13 at 22-24; see also T. at 857, 873, 881,

929, 932, 994, 973.  Outside of his discussion of the medical opinions, the ALJ acknowledged that plaintiff could do some household chores "with assistance and breaks."  T. at 18.  Nevertheless, the ALJ did not explain how the records indicating that plaintiff had pain with sitting for too long and standing for longer than fifteen to thirty minutes, were inconsistent with FNP Kenhart's opinion and the rationale is not evident.  See id..  Simialrly, the ALJ did not explain how plaintiff caring for her sick husband and walking her child to school means that she would not miss work.  See id.; see also Claudio-Montanez v. Kijakazi, No. 21-2027, 2022 WL 17819123, at *3 (2d Cir. Dec. 20, 2022) (summary order) ("[T]he ALJ's reliance on some of [the plaintiff's] activities, such as cooking, cleaning, doing laundry, shopping, enrolling in school, or caring for her mother is misplaced.  Substantial evidence does not support the ALJ's finding that [the plaintiff's] daily activities are inconsistent with the" provider's opined restrictions that the plaintiff "would need to elevate her feet for up to twenty-five percent of the workday, and that she needed to change positions every ten to fifteen minutes.").  As such, the ALJ's reasoning for discounting FNP Kenhart's opinion is not supported by substantial evidence.  See T. at 19.  This is particularly true as the ALJ's only other reason for determining that FNP Kenhart's opinion was only somewhat persuasive was one sentence stating that the opinion "it is not consistent with the evidence in the record[.]" Id.  The ALJ did not discuss any specific evidence, cite to any records, or otherwise explain his determination.  See id.  Accordingly, on remand, the ALJ should thoroughly explain consideration of FNP Kenhart's opinion in accordance with 20 C.F.R. §§ 404.1520c and 416.920c.

As to plaintiff's subjective complaints, she cites 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and states that "[t]hese factors strongly support greater limitations" because "the evidence shows chronic severe pain in her head, hips, back, neck, ankles and feet, she failed conservative treatment, she tried numerous medications and non-medication treatment (including injections and radio frequency ablation), she was a candidate for surgery, [and] the need to take frequent breaks/rests, etc." Dkt. No. 13 at 24.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) explain that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [the ALJ] will carefully consider any other information you may submit about your symptoms." The regulations note that "[t]he information that your medical sources or nonmedical sources provide about your pain or other symptoms . . . is also an important indicator of the intensity and persistence of your symptoms." Id. §§ 404.1529(c)(3), 416.929(c)(3). The regulations then list factors that are relevant to a plaintiff's pain, such as a plaintiff's daily activities, the intensity of the pain, any medications being used, and any other measures used to relieve pain. See id. §§ 404.1529(c)(3), 416.929(c)(3).

As the Commissioner states, plaintiff "does not identify any factor that was not considered[]" by the ALJ  Dkt. No. 17 at 23-24.  The ALJ acknowledged plaintiff's reported pain, her consideration for surgical intervention, and that she could do certain household chores "with assistance and breaks." T. at 18.  It is not the Court's function to re-weigh plaintiff's subjective complaints under 20 C.F.R. §§ 404.1529(c)(3) or 416.929(c)(3) and plaintiff has not sufficiently formed an argument concerning this

43

issue.  <u>See</u> Dkt. No. 13 at 24.  As such, the Court does not find error on this ground.

Nevertheless, as the Court is ordering the Commissioner's decision to be remanded on

other grounds, the ALJ should fully address plaintiff's subjective complaints as required

by the relevant regulations on remand.  <u>See</u> <u>Sylcox v. Colvin</u>, No. 14-CV-2161

(PAC/HBP), 2015 WL 5439182, at *14 (S.D.N.Y. Sept. 15, 2015) (noting that the

plaintiff's argument was not clear but that on remand, which the court already

determined was appropriate, the ALJ would "have to reassess [the] plaintiff's RFC in

light of any new evidence").

### C. Step-Five Determination

Plaintiff argues that the ALJ erred in making his step-five determination because

the hypothetical RFC that the ALJ presented to the VE did not account for all of

plaintiff's limitations, including an off-task or absenteeism limitation.  <u>See</u> Dkt. No. 13 at

26-27.  The Commissioner argues that plaintiff's RFC is supported by substantial

evidence and the hypothetical presented to the VE appropriately reflected that RFC.

<u>See</u> Dkt. No. 17 at 24-25.

As the Court is remanding the Commissioner's decision for the ALJ to consider

new and material evidence and because the RFC determination is not supported by

substantial evidence, the ALJ's step-five determination will necessarily need to be

reassessed on remand.  The Court need not further address the step-five arguments.

<u>See</u> <u>Wilson v. Comm'r of Soc. Sec.</u>, No. 1:16-CV-77 (NAM), 2017 WL 1194229, at *5

(N.D.N.Y. Mar. 30, 2017) ("Because remand is recommended for the reasons discussed

above, remand is also recommended for a new analysis at step five."); <u>Anthony A. v.</u>

<u>Comm'r of Soc. Sec.</u>, No. 3:20-CV-00943 (TWD), 2022 WL 806890, at *8 (N.D.N.Y.

Mar. 17, 2022) ("Because remand is required, the Court declines to reach findings on issues related to the RFC and step five determinations.").

### D.  Nature of remand

At the end of her brief, plaintiff summarily seeks remand for the calculation of benefits, but provides no argument as to why that relief is warranted.  See Dkt. No. 13 at 27.  "A remand for calculation of benefits is warranted 'when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.'"  Mortise v. Astrue, 713 F. Supp. 2d 111, 128 (N.D.N.Y. 2010) (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  As the ALJ is not required to adopt Dr. Minhas' opinions and there is evidence in the record that indicates that plaintiff is not disabled, the Court will not remand for the calculation of benefits and instead remand for further proceedings.  See Thomas T. on behalf of E.G.T. v. Comm'r of Soc. Sec., No. 5:21-CV-1225 (BKS/DEP), 2023 WL 2049526, at *5 (N.D.N.Y. Jan. 31, 2023) (footnote omitted) (declining to remand for the calculation of benefits because "[t]he opinion evidence does arguably provide a basis to find that the claimant might perhaps meet the standard for disability, particularly as to the ability to remain on-task during a workday[; h]owever, the relevant question is whether those opinions are consistent with the medical evidence, and the ALJ's failure in this case to show that she properly considered all of that evidence when assessing the opinions prevents meaningful review on that point."), report and recommendation adopted, 2023 WL 2048560 (N.D.N.Y. Feb. 16, 2023).

Further, when a case is remanded because the Appeals Council failed to consider new evidence, the appropriate course is to remand for further proceedings.

45

See Anthony A. v. Comm'r of Soc. Sec., No. 3:20-CV-00943 (TWD), 2022 WL 806890, at *5 (N.D.N.Y. Mar. 17, 2022) (quoting Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. 2009)) ("If the Appeals Council fails to consider new, material evidence, 'the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence.'"); accord Samantha D. v. Comm'r of Soc. Sec., No. 3:18-CV-1280 (ATB), 2020 WL 1163890, at *4 (N.D.N.Y. Mar. 11, 2020); Stratton v. Colvin, 51 F. Supp. 3d 212, 219 (N.D.N.Y. 2014).  Accordingly, the Court remands the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.


## VI.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **REVERSED and REMANDED for further proceedings**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 8, 2023
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge